In re the MARRIAGE OF John Robert WINNIKE and Kathleen A. Kruse Winnike

Upon the Petition of John Robert Winnike, Appellee,

And Concerning Kathleen A. Kruse Winnike, Appellant.

No. 91–1979.

Court of Appeals of Iowa.

Dec. 29, 1992.

Kathleen A. Kruse, pro se.

Patricia C. Kamath, Iowa City, for appellee.

Heard by DONIELSON, P.J., HAYDEN, J., and PERKINS, Senior Judge.*

PER CURIAM.

In November 1986 Kelsey was born to John (Jack) Winnike and Kathleen (Kitty) Kruse Winnike. In May 1987 Jack filed for dissolution of the parties' marriage. In June 1988 the district court filed a dissolution decree. The parties' stipulation to share custody of Kelsey equally was read into the record. No child support was ordered.

In December 1988, after allegations of suspected sexual abuse against Jack, a juvenile court proceeding began with the filing of a child in need of assistance (CINA) petition. The petition was based on Kitty's allegations of sexual abuse. While the action was pending the juvenile court gave sole care of the child to the mother. Since this period, Kitty has continually alleged Jack sexually abused their daughter. In September 1989 the juvenile court entered its ruling and order. The court found the parties stipulated Kelsey was a child in need of assistance. The court found no evidence to support the allegations Jack either sexually or psychologically abused the child. The court then determined custody be transferred to Jack. The court further ordered Kitty's visitation with Kelsey be closely supervised. Kitty appealed this order. On December 27, 1990, the court of appeals denied Kitty's request to remand for additional evidence on the sexual abuse issue and affirmed the juvenile court. *In re K.R.W.*, 471 N.W.2d 83 (Iowa App.1990). The Iowa Supreme Court denied further review.

In September 1991 the juvenile court entered a ruling and order granting, in part, concurrent jurisdiction of this case to the district court for purposes of determining final custody, visitation, and child support.

Both parties filed applications to modify the original dissolution decree. Thus began this modification proceeding in district court.

Prior to the hearing on the modification applications, the district court determined evidence concerning the allegation of sexual abuse, which was addressed in the juvenile proceeding, would not be admitted as evidence. Also prior to the hearing, in December 1991, the district court awarded Jack temporary child support of $475 per month. Kitty appealed from this ruling.

The modification action proceeded to trial in February 1992. At trial Kitty continued to attempt to introduce evidence of Jack's alleged sexual abuse. Following the trial, the district court entered its ruling. The court awarded sole custody of Kelsey to Jack. The court also ordered visitations between Kitty and Kelsey to be supervised, and such supervision was to meet with Jack's approval. Kitty was also ordered to pay child support of $475 per month. Kitty filed an appeal. This appeal was consolidated with the prior appeal of support for purposes of appellate consideration.

■■■ I. *Issue Preclusion.* Issue preclusion prevents parties from relitigating issues which have already been raised and decided. *Clark v. Glanton*, 370 N.W.2d 606, 608 (Iowa App.1985) (citing *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)). Kitty contends the district court erred in not allowing evidence of alleged sexual abuse by Jack of the parties' daughter during the time between August to December of 1988. In the previous CINA action the juvenile court concluded there was not sufficient evidence to support a finding Jack had sexually abused his daughter. This court refused to remand for additional evidence on the abuse issue and affirmed the district court's decision. *In re K.R.W.*, 471 N.W.2d 83 (Iowa App. 1990). In this modification action we address whether the juvenile court ruling and the subsequent decision by the court of

---

* Senior judge from the 5th Judicial District serving on this court by order of the Iowa Supreme Court.

appeals affirming the juvenile court is preclusive on any issues which may be considered in the modification proceeding in district court. Specifically we consider if the issue of whether Jack sexually abused Kelsey is precluded.

██ The doctrine of issue preclusion applies when:

1. The issue concluded is identical;
2. The issue was raised and litigated in the prior action;
3. The issue was material and relevant to the disposition of the prior action; and
4. The determination of the issue in the prior action was necessary and essential to the resulting judgment.

*Harrison v. State Bank,* 440 N.W.2d 398, 401 (Iowa App.1989) (quoting *Clark,* 370 N.W.2d at 608). We conclude the doctrine of issue preclusion applies in this case because the four prerequisites have been satisfied. The juvenile court, in determining whether Kelsey should be adjudicated in need of assistance, addressed the sexual abuse allegation against Jack. The issue in the juvenile court action of whether Jack sexually abused his daughter is identical to the one Kitty attempted to raise in this modification action in district court. The issue of sexual abuse was litigated and resolved in the previous juvenile court action. Determining whether Jack sexually abused his daughter was material and necessary to the court's disposition of the CINA action. The parties in this modification action were also parties in the previous juvenile court action. We hold the issue of sexual abuse should not be relitigated in this modification action.

██ II. *Modification.* The issue we address on appeal is whether the facts of this case warrant modification of the parties' original dissolution decree. The district court modified custody and visitation provisions of the original dissolution decree and provided for child support. Modification of a dissolution decree is allowed only when there has been a material and substantial change in circumstances since the filing of the original decree. *Mears v. Mears,* 213 N.W.2d 511, 514 (Iowa 1973).

Our review of the district court's modification of custody, visitation, and support provisions of a dissolution decree is de novo. Iowa R.App.P. 4. Although we give weight to the findings by the district court, especially those concerning credibility of witnesses, we are not bound by them. Iowa R.App.P. 14(f)(7). Good reasons exist for us to give close consideration to the district court's assessment of the credibility of witnesses. *In re Marriage of Vrban,* 359 N.W.2d 420, 423 (Iowa 1984). The district court " 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.' " *Id.* (quoting *In re Marriage of Callahan,* 214 N.W.2d 133, 136 (Iowa 1974)).

██ A. *Custody.* The district court modified the custody provisions of the original dissolution decree by setting aside joint custody and awarding sole custody to Jack. To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. *In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983). Our first and foremost consideration in determining custody is the best interest of the child involved. Iowa R.App.P. 14(f)(15); *In re Marriage of Weidner,* 338 N.W.2d 351, 356 (Iowa 1983); *In re Marriage of Smith,* 471 N.W.2d 70, 72 (Iowa App.1991) (citation omitted).

The legislature and judiciary of this State have adopted a strong policy in favor of joint custody from which courts should deviate only under the most compelling circumstances. The circumstances of this case are sufficiently compelling to justify setting aside joint custody in favor of a sole custody arrangement.

██ In our de novo review we have examined the testimony presented at trial, and we find clear and convincing evidence supports placement of the child in the sole custody of Jack. Kelsey has been living with her father since the juvenile court

ruling on September 5, 1989. He has maintained a good and stable home for them under very trying circumstances. There is evidence Kelsey is doing well and thriving in this environment. A sole custody arrangement in favor of Jack is in the child's best interests. We also considered the relationship of the parents. In determining custody we can give great weight to a parent's attempt to alienate a child from her other parent if evidence establishes the actions will adversely affect a minor child. *Vrban*, 359 N.W.2d at 425 (citation omitted). Tension between the parents is a factor in determining if a custody modification is appropriate. *In re Marriage of Stanley*, 411 N.W.2d 698, 701 (Iowa App. 1987) (citing *In re Marriage of Krebsbach*, 395 N.W.2d 189, 191 (Iowa App.1986)). Since the parties' dissolution decree was entered their actions show they are no longer able to cooperate under a joint custody arrangement. Evidence clearly shows the parties are unable to support each other's relationship with the child.

■ In determining what is in the best interests of the child we can look to a parent's past performance because it may be indicative of the quality of the future care that parent is capable of providing. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) (citations omitted). Kitty is strongly committed to pursuing her allegations of sexual abuse. However, she seems oblivious to any harm her public campaign against Jack may have on her daughter. Evidence shows Kitty's ongoing pursuit of her beliefs have detrimentally affected her visitations with Kelsey. One social worker testified Kitty used counseling sessions to try to convince him to fight for a reinvestigation of her sexual abuse allegations against Jack. The purpose of these sessions was for Kitty to work out her hostilities against Jack and others. Another worker testified Kitty used visitations to collect evidence for her case rather than using visitations to nurture her daughter. Kitty also violated several department guidelines for visitations concerning the number of visitors, restrictions on photography, and negative references to Jack. The record shows Kitty's violations became

so frequent and troublesome the department terminated her visitation privileges in November 1991. There is no evidence Kitty has pursued the department's action in juvenile court.

There is also a strong indication Kitty may employ self-help tactics in an attempt to keep the child from Jack. In the summer of 1987, shortly after receiving marriage dissolution papers from Jack, Kitty left Iowa with the child and traveled to California without contacting Jack. Only through his own efforts was Jack able to locate them and bring his daughter back to Iowa.

Evidence clearly shows significant emotional harm may come to the child if joint custody is permitted. The best interests of a child call for stability in a nurturing and secure environment. *See In re Marriage of Carrico*, 284 N.W.2d 251, 254 (Iowa 1979). The best interests of Kelsey warrant the change to sole custody in favor of Jack. We affirm on this issue.

■ B. *Visitation.* The district court provided visitations between Kitty and Kelsey must be supervised. Due to a lack of authority, however, the district court properly stated it could not order the department to supervise Kitty's visitations. Therefore, the court required the supervised visits must meet with Jack's approval.

The supervisory services of the department are an exclusive remedy of chapter 232 proceedings. In *Iowa Department of Social Services v. Blair*, the Iowa Supreme Court stated "[j]ust as a district court in a dissolution of marriage case is without jurisdiction to make chapter 232 adjudications, it is also without authority to utilize remedies which can only follow from chapter 232 adjudications." *Iowa Dep't of Social Servs. v. Blair*, 294 N.W.2d 567, 570 (Iowa 1980) (citing *Carrico*, 284 N.W.2d 251; *In re Marriage of Snyder*, 276 N.W.2d 402 (Iowa 1979)). "The legislature has provided that the [d]epartment may exercise protective supervision over children only as the result of a chapter 232 proceeding, not a dissolution pursuant to chapter 598."

*Blair,* 294 N.W.2d at 570. Although a court in equity has considerable flexibility in providing a remedy, we cannot expand an administrative agency's authority beyond its statutory limits. *Id.* By allowing such an expansion we would be usurping the legislature's role. *Id.* Pursuant to Iowa Code chapter 232 the juvenile court has the jurisdiction to order an agency to monitor visitation. Iowa Code § 232.101 (1991).

The district court lacked subject matter jurisdiction to use the supervisory services of the department in this dissolution of marriage action. There was no evidence prior notice had been served on the department or the order had been entered with the consent of the department. The district court's order providing for visitation under Jack's supervision was proper. We affirm the district court on this issue.

■■■ C. *Child Support.* The parties' original dissolution decree had no support provision. The modification of the custody arrangement is a significant change which justifies the imposition of child support. *In re Marriage of Green,* 417 N.W.2d 252, 254 (Iowa App.1987). The district court in this modification action properly awarded child support in accordance with the Iowa Supreme Court's support guidelines. We affirm the district court on this issue.

AFFIRMED.